# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD ALEXANDER,<br><br>                 Plaintiff,<br><br>v.<br><br>LEADERSHIP RESEARCH INSTITUTE, INC., et al.,<br><br>                 Defendants. | Case No.: 3:22-cv-01416-RBM-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[Doc. 5]** |

On October 6, 2022, Defendants Leadership Research Institute, Inc., Howard Morgan, Richard Silvestri, Steven Rumery, John Streitmatter, and Joelle Jay ("Defendants") filed a Motion to Dismiss Plaintiff Todd Alexander's ("Plaintiff") First Amended Complaint ("Motion"). (Doc. 5.) Plaintiff filed a response in opposition on November 8, 2022 (Doc. 6), and Defendants filed a reply on November 14, 2022 (Doc. 7). For the reasons discussed below, Defendants' Motion is **GRANTED**.

## I.    BACKGROUND

### A.    Procedural Background

On June 14, 2022, Plaintiff filed a complaint against Defendants in the Superior Court of the State of California for the County of San Diego. (*See* Doc. 1–2.) On July 19, 2022, Plaintiff filed a First Amended Complaint ("FAC") "to correct a typo in a Defendant

party's name." (Doc. 6 at 3; *see* Doc. 1–5.) On September 19, 2022, Defendants removed the action to this Court. (Doc. 1.) The FAC asserts causes of action for: (1) breach of contract, (2) declaratory relief, (3) injunctive relief, and (4) fraud. (*See* Doc. 1–5.) On October 6, 2022, Defendants filed the instant Motion requesting the Court dismiss Plaintiff's third and fourth causes of action with prejudice and without leave to amend for failure to state a claim. (Doc. 11–1.)

B. Factual Background

Defendant Leadership Research Institute, Inc. ("LRI") is a corporation that "provides leadership training, business and executive coaching and education services to individuals and companies." (Doc. 1–5 at 2, 4.) Defendants Howard Morgan, Richard Silvestri, Steven Rumery, John Streitmatter, and Joelle Jay are directors and shareholders of LRI. (*Id.* at 3.) Plaintiff became an employee of LRI in 2004. (*Id.* at 4.) In 2005, "Defendants invited [Plaintiff] to join LRI as a director and 5% shareholder (1,200 corporate shares)." (*Id.*) Plaintiff accepted, signed a buy-out agreement, and paid a buy-in amount of $66,000.00. (*Id.*)

On October 10, 2014, Plaintiff signed an amended buy-out agreement entitled "Leadership Research Institute, Inc. Amended and Restated Shareholder Buy-Out Agreement" (the "Agreement"). (*Id.* at 5.) The Agreement amends and consolidates prior buy-out agreements entered into in 2005 and 2006. (*Id.*) The Agreement sets forth the terms of a shareholder's buyout including Client Revenue Stream ("CRS") payments for four years, and Settlement Fees. (Doc. 1–5 at 5.) CRS payments are a "percentage of the revenue from clients serviced by the departing shareholder." (*Id.*) Settlement Fees are to be paid out in annual installments and are defined as:

> (A) the average gross annual revenues of the Corporation for (i) the year prior to the Withdrawal Year, (ii) the Withdrawal Year, and (iii) the year following the Withdrawal Year, as shown on the Corporation's federal tax return, multiplied by (B) a fraction, the numerator of which shall be the number of shares held by the Withdrawing Shareholder on the Withdrawal Date and the denominator of which shall be the total number of shares outstanding on the Withdrawal Date.

(Doc. 1–5 at 5.) The Agreement also includes a non-compete restriction which explains that if a withdrawing shareholder engages in prohibited competitive activity within five years of the withdrawal, the buyout amount may be impacted. (*Id.* at 6; Doc. 5–1 at 7.)

In or about August 2015, Plaintiff provided notice to Defendants that he wished to withdraw as director or LRI, and Plaintiff and Defendants (collectively, the "Parties") agreed that the shareholder buyout in the Agreement was triggered by the withdrawal. (Doc. 1–5 at 6.) The Parties discussed whether Plaintiff would continue as an employee of LRI, and LRI wished to classify Plaintiff "as a Principal Consultant, as opposed to an employee in the capacity of a Principal Consultant of LRI." (*Id.*) Plaintiff claims this title distinction required him to pay his own healthcare and eliminated CRS Payments in 2015 and 2016. (*Id.* at 12.)

Moreover, Plaintiff alleges that "LRI unilaterally selected December 1, 2015 as the Withdrawal Date for [Plaintiff] for purposes of calculating the Settlement Fees owed [Plaintiff], the total of which would be calculated from LRI total revenues in 2014, 2015, and 2016, and paid out over time annually." (*Id.* at 7.) The annual payments began in 2016. (*Id.*) LRI postponed the accrual of CRS Payments to Plaintiff "until he ceased being a Principal Consultant for LRI, so that per Defendants' interpretation of the Agreement [Plaintiff] was only to be paid out the CRS Payments for work performed in 2017 and 2018." (*Id.*) Plaintiff alleges that on January 29, 2019, he "received an invoice for a client he brought with him to LRI for work performed for that client in 2018. Per [the Agreement], Plaintiff was supposed to receive a portion of that invoice," but claims he did not receive the payment. (Doc. 5–1 at 7; *see* Doc. 1–5 at 7.)

Plaintiff explains that "LRI paid Settlement Fees annually to [Plaintiff] based on LRI's determination of the annual revenues and calculation of the formula in the Agreement from 2016 to 2021, as well as some CRS Payments for work performed in 2017 and 2018." (Doc. 1–5 at 7.) Additionally, LRI repurchased Plaintiff's 1,200 shares in LRI. (*Id.*) However, Plaintiff contends that "[i]n total, through 2021, [Plaintiff] received approximately $125,000.00 of what based on Defendants' calculations should be a total of

at least $250,000.00." (*Id.*)

On March 10, 2022, Defendant Howard Morgan sent correspondence to Plaintiff on behalf of LRI explaining that the forthcoming payment for 2021 would be the last buyout payment to Plaintiff because "both during and after leaving the firm [Plaintiff has] continued to provide similar services to individuals and organizations" and "if you choose to continue in the same line of business, the payout is reduced by 50%." (*Id.*) Plaintiff claims this was the first notice he was given that Defendants were not going to pay him his total buyout per the agreement. (*Id.* at 7–8.) Plaintiff explains he "has complied with his obligations under the Agreement, and has not waived or otherwise released Defendants from paying [Plaintiff] the entire amount (at least $250,000 based on Defendants' numbers, but subject to proof) owed to [Plaintiff] under the terms of the Agreement." (*Id.* at 8.) Thus, Plaintiff claims he has suffered damages of at least $125,000.000 "due to Defendants' refusal to pay him amounts owed [] pursuant to the Agreement." (*Id.*)

## II.   LEGAL STANDARD

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the

Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted). When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.   DISCUSSION

#### A.   Plaintiff's Third Cause of Action – Injunctive Relief

Defendants argue that Plaintiff's third cause of action for injunctive relief should be dismissed because "(1) injunctive relief is a remedy, not a cause of action, and (2) Plaintiff has failed to plead irreparable harm." (Doc. 5–1 at 9.) Thus, Defendants contend this cause of action fails as a matter of law. (*Id.*) Plaintiff responds by stating, "[a]s to the third cause of action . . . Plaintiff concedes that Defendants['] motion has merit and that cause of action should be dismissed." (Doc. 6 at 2.)

Given that Plaintiff consents to the dismissal of his third cause of action, the Court finds dismissal appropriate. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's third cause of action.

#### B.   Plaintiff's Fourth Cause of Action – Fraud

Next, Defendants argue Plaintiff's fourth cause of action for fraud also fails as a matter of law because "(1) Plaintiff has not pled any purported fraud with the requisite specificity, and (2) Plaintiff's alleged conclusions do not support a fraud cause of action." (Doc. 5–1 at 9.) Defendants argue that "Plaintiff does not allege what specifically was said, or by whom . . . Plaintiff's claim appears to be simply that Defendants breached a contract term, which states a claim for breach of contract, not fraud." (*Id.*) Defendants

explain that "[b]ecause the alleged fraud here arises solely from Defendants' purported statements that they would comply with the 2014 Agreement, Plaintiff has failed to state a claim for fraud", and this cause of action should be dismissed. (*Id.* at 12.) Moreover, "to the extent Plaintiff means to allege fraud with regard to one purported missed payment to Plaintiff for one invoice in 2019 for work performed in 2018, Plaintiff's allegations are devoid of the requisite specificity." (*Id.* at 11.)

Plaintiff counters that "[a] fraud cause of action is not subject to a motion to dismiss simply because a breach of contract cause of action has also been asserted." (Doc. 6 at 6.) Moreover, Plaintiff argues that Defendants' misrepresentations "including regarding CRS payments and Settlement Fees, were relied upon by Plaintiff, inducing him to sign [] the Agreement and then cooperating with Defendants post-withdrawal." (*Id.* at 7.) Plaintiff also explains that "Defendants had an intent to defraud Plaintiff; that Plaintiff's reliance on Defendants['] misrepresentations/wrongful conduct was justified; and that the reliance caused him damages." (*Id.*)

To establish a cause of action for fraud, a plaintiff must prove the following elements: "(1) misrepresentation in the form of a false statement or omission; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages." *Embraceable You Designs, Inc. v. First Fid. Grp., Ltd.*, No. 2:09-CV-03271-ODW, 2012 WL 6012852, at *8 (C.D. Cal. Dec. 3, 2012) (citing *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173–74 (2003)). Federal Rule of Civil Procedure ("Rule") 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see Kokopelli Cmty. Workshop Corp. v. Select Portfolio Servicing, Inc.*, No. 10CV1605 DMS RBB, 2011 WL 719489, at *5 (S.D. Cal. Feb. 22, 2011). "In the Ninth Circuit, this rule 'has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *DCI Sols., Inc. v. Urb. Outfitters, Inc.*, No. 10-CV-369-IEG(JMA), 2010 WL 1838303, at *6 (S.D.

Cal. May 6, 2010) (quoting *Misc. Serv. Workers, Drivers & Helpers v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981)).

In considering Plaintiff's allegations and Rule 9(b)'s heightened pleading requirements, the Court finds the FAC insufficient to state a claim for fraud. The FAC alleges that "[a]t various times and dates prior to October 10, 2014, Defendants induced to [Plaintiff] to enter into the Agreement by promising him that the buyout terms of the Agreement would be executed fairly upon his retirement and that he would receive full payment of the buyout amounts." (Doc. 1–5 at 12.) After Plaintiff's withdrawal as director, Plaintiff claims "Defendants made statements and representations that he was valued, his continued association with LRI desired, and that he would be treated fairly and obtain full payment of his buyout." (*Id.*) Plaintiff claims he relief on the aforementioned statements and "is damaged by Defendants' misrepresentations regarding the Agreement and his buyout payments . . . ." (*Id.* at 13.) Even construing the pleadings in the light most favorable to Plaintiff, the Court finds such allegations fail to establish a cause of action for fraud. *See Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989) ("[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient"); *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir.1973) (concluding that allegations stating time, place, and nature of allegedly fraudulent activities meet Rule 9(b)'s particularity requirement).

Here, Plaintiff generally alleges that Defendants made certain representations such as "the buyout terms of the Agreement would be executed fairly" and that "[Plaintiff] was valued." (*See* Doc. 1–5 at 12.) However, such allegations lack specificity, and Plaintiff fails to state facts sufficient to support an inference of knowledge or intent. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged")

(quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)).  Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's fourth cause of action.

### C. Leave to Amend

When a Rule 12(b)(6) motion is granted, a district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe*, 911 F.2d at 247.  Factors to be considered include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  In considering the *Foman* factors listed above, the Court **GRANTS** Plaintiff leave to amend.  It does not appear that amendment would be futile, and the Court does not find amendment will create undue prejudice or delay.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion (Doc. 5) and hereby orders the following:

1. In light of Plaintiff's consent to dismissal, the Court **DISMISSES WITH PREJUDICE** Plaintiff's third cause of action for injunctive relief.

2. Regarding Plaintiff's fourth cause of action for fraud, the Court **GRANTS** Plaintiff twenty-one (21) days leave from the date of this Order in which to file an amended complaint which cures all the deficiencies of pleading noted.  Plaintiff is specifically advised that his amended pleading must specifically detail the alleged conduct. Conclusory allegations unsupported by specific allegations of fact are insufficient to properly comply with the Federal Rules of Civil Procedure.

/ / /

/ / /

/ / /

/ / /

**IT IS SO ORDERED**.

DATE:  May 17, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE